2000 ME 177

**CHILD DEVELOPMENT SER-
VICES—CUMBERLAND
COUNTY et al.**

v.

**ATTORNEY GENERAL.**

Supreme Judicial Court of Maine.

Argued Oct. 4, 2000.
Decided Oct. 20, 2000.

Deirdre M. Smith (orally), Donald A. Kopp, Drummond Woodsum & MacMahon, Portland, for plaintiffs.

Andrew Ketterer, Attorney General, Paul D. Stern, Dep., Attorney General (orally), Dennis M. Doiron, Asst. Attorney General, Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

CALKINS, J.

[¶ 1] The plaintiffs, sixteen regional sites of the Child Development Services System (CDS), appeal from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) denying their motion for summary judgment and granting the motion for summary judgment of the Attorney General. We affirm the judgment. The Attorney General is authorized, pursuant to 5 M.R.S.A. § 191 (1989 & Pamph.1999), to control the provision of legal services to the regional CDS sites.

[¶ 2] The Legislature created CDS to "maintain[ ] a coordinated service delivery system," 20–A M.R.S.A. § 7724(1) (Supp.1999), for the provision of federally required preschool education and related

services to children with disabilities, *id.* §§ 7725, 7727(1) (Supp.1999). CDS was "established as a body corporate and politic and as a public instrumentality of the State ...." *Id.* § 7724(2) (1993). There are sixteen regional CDS sites which provide direct services to children with disabilities. The regional CDS sites are "locally governed regional intermediate educational units or private nonprofit corporations established to ensure provision of services to infants and children ...." *Id.* § 7725(8) (Supp.1999).

[¶ 3] Each regional CDS site has a board of directors, 20–A M.R.S.A. § 7730 (Supp. 1999), and, pursuant to contracts with the Maine Department of Education (DOE), provides services to preschool children with disabilities in its region, *id.* § 7732–A (Supp.1999). The sites have employed private legal counsel to advise them on employment and fiscal matters; the interpretation of and compliance with federal and state special education laws; and the extent of DOE authority over the sites. They have also retained private attorneys to provide representation at special education hearings and appeals.

[¶ 4] In February 1999, the Attorney General notified the regional CDS sites that his office had reviewed 5 M.R.S.A. § 191 to determine whether the Attorney General was responsible for providing legal services to the sites.[1] The Attorney General informed the sites that they fall within the statutory authorization to provide legal services to various state entities and that after March 1, 1999, the sites

would be required to obtain written authorization from the Attorney General to employ private legal counsel.

[¶ 5] The regional CDS sites brought this action seeking a declaration that the Attorney General does not have the authority to control the provision of legal services to the sites, and that the sites may employ private counsel without interference by the Attorney General. In granting the summary judgment motion of the Attorney General, the Superior Court concluded that 5 M.R.S.A. § 191 authorizes the Attorney General to represent the regional CDS sites and to assert the Attorney General's authority over the ability of the sites to employ private counsel.

[¶ 6] The only issue before us is the interpretation of 5 M.R.S.A. § 191. "Statutory construction is a matter of law, and decisions regarding the meaning of a statute are reviewed de novo." *Home Builders Ass'n of Maine, Inc. v. Town of Eliot,* 2000 ME 82, ¶ 4, 750 A.2d 566, 569.

> In general, the starting point in interpreting a statute is the statutory language itself. Unless the statute itself reveals a contrary legislative intent, the plain meaning of the language will control its interpretation. To that end, the particular words used in the statute must be given their plain, common and ordinary meaning.

*Hutchinson v. Cary Plantation,* 2000 ME 129, ¶ 10, 755 A.2d 494, 497 (citations and quotations omitted).

---

1. Section 191 provides in relevant part:
   The Attorney General, a deputy, assistant, or staff attorney shall appear for the State, the head of any state department, the head of any state institution and agencies of the State in all civil actions and proceedings in which the State is a party or interested, or in which the official acts and doings of the officers are called in question, in all the courts of the State; and in such actions and proceedings before any other tribunal when requested by the Governor or by the Legislature or either branch thereof. All such actions and proceedings shall be prosecuted or defended by the Attorney General or

under the Attorney General's direction. Writs, summonses or other processes served upon such officers shall forthwith be transmitted by them to the Attorney General. All legal services required by such officers, boards and commissions in matters relating to their official duties shall be rendered by the Attorney General or under the Attorney General's direction. The officers or agencies of the State shall not act at the expense of the State as counsel, nor employ private counsel except upon prior written approval of the Attorney General.
   5 M.R.S.A. § 191 (Pamph.1999).

[¶ 7] Section 191 requires the Attorney General to appear for "agencies of the State" and to render "[a]ll legal services required by [State] officers, boards and commissions in matters relating to their official duties ...." 5 M.R.S.A. § 191. The precise question before us is whether the regional CDS sites are "agencies of the State."

[¶ 8] We conclude that the regional CDS sites are state agencies for purposes of section 191. They are acting as the State and for the State in fulfilling the State's duties of providing services to children with disabilities. Both the statutory scheme and the undisputed facts demonstrate their "state agency" nature. The sites are primarily funded by contracts with the State which distribute state and federal money to the sites. *See* 20–A M.R.S.A. § 7727(4–A) (Supp.1999). The DOE has significant supervisory powers over the sites. For example, a site's board of directors may enter into contracts, but "the board shall provide to the [DOE] copies of any contract for review upon the [DOE's] request and shall obtain prior [DOE] approval of the prototype for provider contracts, any multi-year leases and any memoranda of understanding with other entities." *Id.* § 7731(6). The DOE is required to review and approve the budgets of the regional sites. *Id.* § 7727(4). The DOE is authorized to "assume temporary responsibility for operations at a site that fails to meet compliance requirements," *id.* § 7727(6), and any site decision to dissolve or consolidate with another site is subject to DOE approval, *id.* § 7729. Although authorized to organize as either "a private nonprofit corporation or an intermediate educational unit," *id.* § 7729,

no regional CDS site has organized as a nonprofit corporation.

[¶ 9] Furthermore, unlike other entities, the regional CDS sites are not authorized by statute to hire private legal counsel. For example, the Maine Turnpike Authority, "a body both corporate and politic," 23 M.R.S.A. § 1965(1) (Supp.1999), is authorized to "[e]mploy ... attorneys ... as it deems necessary or desirable for its purposes," *id.* § 1965(1)(K) (1992).

[¶ 10] Attributes of the regional CDS sites demonstrate that they are state agencies for purposes of 5 M.R.S.A. § 191.[2] Because they are not otherwise authorized to hire private legal counsel, the Attorney General is authorized to provide legal services and oversee the provision of private legal services to the regional CDS sites.

The entry is:

Judgment affirmed.

2. The sites argue that their employees' ineligibility to participate in the Maine State Retirement System indicates the sites' autonomy. *See* P & S.L.1995, ch. 78 (stating regional CDS sites do not meet the definitional requirements to be participating local districts of the retirement system). The fact that site employees are not state employees for purposes of the Maine State Retirement System, however, is not determinative of whether the sites are agencies within the meaning of section 191. *See Dep't of Transp. v. Maine State Employees Ass'n,* 1999 ME 7, ¶ 14, 727 A.2d 896, 900 (stating employees may be considered state employees under some provisions of law but not for purposes of others).