2001 ME 72

Heather L. LINDQUIST

v.

BANGOR MENTAL HEALTH INSTITUTE.

Supreme Judicial Court of Maine.

Argued: April 10, 2001.
Decided: May 4, 2001.

Arthur J. Keenan, Esq. (orally), Office of Advocacy, Department of Mental Health, Mental Retardation, and Substance Abuse Services, Bangor, for plaintiff.

G. Steven Rowe, Attorney General, Katherine Greason, Asst. Attorney General (orally), Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Heather L. Lindquist appeals from the judgment of the Superior Court (Penobscot County, *Marsano. J.*) granting the motion to dismiss of Bangor Mental Health Institute (BMHI) and dismissing her petition for review of final agency action. Lindquist's petition was dismissed on the ground that her attorney, who is employed by the Office of Advocacy within the Department of Mental Health, Mental Retardation, and Substance Abuse Services, is not authorized to represent Lindquist in court. Because we conclude that Lindquist's petition should not have been dismissed, we vacate the dismissal.

## I. FACTS AND BACKGROUND

[¶ 2] Lindquist was involuntarily committed to BMHI in July 1999. This was her twelfth admission to BMHI. She suffers from post-traumatic stress disorder. She also suffers from phenylketonuria (PKU), and for this reason her physician at BMHI prescribed a restrictive PKU diet with a protein supplement formula. Lindquist objected to the diet and filed a grievance with BMHI alleging her right to refuse the diet. She proceeded through the several steps of the grievance procedure, and throughout she was represented by an attorney employed by the Office of Advocacy.

[¶ 3] Following a hearing before the Division of Administrative Hearings, Lindquist and BMHI reached an agreement which was signed by Lindquist's attorney and by the Superintendent of BMHI. The agreement was submitted to the Commissioner of the Department, who approved it. Among other things, the agreement states that for future admissions of Lindquist to BMHI, BMHI will honor any request by her for a regular diet. The agreement further provides that BMHI will train its staff, no later than February 29, 2000, "on the principle that the patient has an absolute right to refuse treatment . . . ."

[¶ 4] Thereafter, Lindquist sought confirmation from the BMHI Superintendent that the staff training had taken place, and she sought specific information regarding the training. The Superintendent informed Lindquist by memorandum that "appropriate staff were trained," and denied her request for specific information on the training. She then filed a motion before the Division of Administrative Hearings essentially requesting the same information that she had requested of the Superintendent. By letter, the Commissioner notified Lindquist's attorney that Lindquist could obtain any nonconfidential records by proceeding under the Freedom of Access rules. The Commissioner also informed Lindquist that no formal training was held, but that information was given to the BMHI staff at staff meetings regarding patients' rights to refuse treatment.

[¶ 5] Lindquist then filed a petition for review of final agency action in the Superior Court, pursuant to 5 M.R.S.A. § 11008 (1989) and M.R. Civ. P. 80C, asking that BMHI be directed to provide the information she had requested. The Department responded by moving to dismiss the petition and alleging, as the sole ground for the dismissal, the lack of authority of Lindquist's attorney to represent her in court. The Superior Court examined the statute which establishes the Office of Advocacy, the employer of Lindquist's attorney. 34–B M.R.S.A. § 1205 (Pamph.2000). The court concluded that the statute does not authorize advocates employed by the Office of Advocacy to represent clients in

court. Lindquist's attorney is duly licensed to practice law in the Maine courts.

## II. DISCUSSION

[¶ 6] We first establish that when a court disqualifies an attorney, licensed to practice in Maine, from representing a party in a lawsuit, the disqualification is not a basis for the dismissal of that lawsuit. We have never held, and the parties have not called to our attention any other jurisdiction that has held, that when a plaintiff's attorney is disqualified, the plaintiff's cause of action is dismissed. When a party seeks to disqualify the attorney representing the opposing party, the appropriate motion is a motion to disqualify the attorney, not a motion to dismiss the lawsuit. *See, e.g., Tungate v. MacLean–Stevens Studios, Inc.,* 1997 ME 113, ¶ 5, 695 A.2d 564, 565 (holding that denial of motion to disqualify attorney is not final judgment); *Casco N. Bank v. JBI Assocs. Ltd.,* 667 A.2d 856, 860–61 (Me.1995) (discussing motion to disqualify an attorney because of alleged conflict); *Adam v. Macdonald Page & Co.,* 644 A.2d 461, 463–65 (Me.1994) (same). If the court grants a motion to disqualify, the party's complaint or petition survives the disqualification.[1] The party whose attorney has been disqualified must be given the opportunity to obtain another attorney or to proceed pro se.

[¶ 7] We further conclude that the Superior Court erred in reaching and deciding, in the context of a motion to dismiss, the issue of whether Lindquist's attorney had the authority to represent her. The Superior Court reached its decision by interpreting the statute which establishes the Office of Advocacy. 34–B M.R.S.A. § 1205. It construed the statute as limiting the representation of clients by attorneys employed by that Office to representation within the Department and as not including representation in court. The Superior Court expressly referenced section 1205(3)(C) which states that the Office shall "[a]ssist clients in any hearing or grievance proceeding of the department." Lindquist argues that the statute nowhere excludes representation in court and contends that section 1205(3)(A) which states that the Office shall "represent the interests of clients in any matter pertaining to the rights and dignity of clients" authorizes representation in court. Lindquist further argued before this Court that if section 1205 were interpreted to preclude representation of Lindquist by the Office of Advocacy in court, the statute would be unconstitutional. *See Legal Servs. Corp. v. Velazquez,* 531 U.S. 533, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001) (holding that restriction on representation in welfare cases violates the First Amendment rights of attorneys and clients of legal services agencies).

[¶ 8] We find it unnecessary to interpret section 1205. Lindquist's attorney was furnished to her through an agency established by the government to represent a particular set of clients. In this respect the Office of Advocacy is similar to numerous agencies in this country funded by the federal, state, or local governments or established by educational institutions or charitable entities to furnish legal services to low-income people, disabled people, abused women, children, elderly persons, aliens, and other categories of people.

[¶ 9] In the context of a lawsuit brought or defended by a client of such an agency, a court should not be drawn into resolving

---

1. The same is true for a party defending an action. If a defendant's attorney is declared disqualified because of a conflict or other reason, the court does not strike the answer and grant a default to the plaintiff.

a collateral issue of whether the client is eligible to be represented in court by the agency's attorney pursuant to the agency's governing statute, rules, or by-laws. Not only is it inefficient for courts to deal with the scope of representation of an attorney or the eligibility of a client as a collateral issue in individual cases, but it would also be an invitation to opposing parties to thwart the access to the courts by these clients if their attorneys had to constantly meet challenges to the scope of representation or eligibility for services.

[¶ 10] Other courts, when faced with challenges to the representation by legal services attorneys of their clients in court, have responded that such challenges are best addressed by the funding authorities. *See Jacobs v. Bd. of Sch. Comm'rs of Indianapolis*, 349 F.Supp. 605, 607 (S.D.Ind. 1972), *aff'd*, 490 F.2d 601 (7th Cir.1973), *vacated as moot on other grounds*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), and cases cited therein.[2] In *Gulf Homes, Inc. v. Gonzales*, 138 Ariz. 596, 676 P.2d 628, 631 (1984), the Arizona Supreme Court discussed the problems caused by repetitive litigation over the propriety of representation of parties by legal services agencies and said: "Neither our courts nor our legal services organizations have the time or resources to take on such a burden ...." *Id.*

[¶ 11] Questions concerning Lindquist's eligibility for representation in court proceedings by the Office of Advocacy should not have been reached by the Superior Court in this proceeding.

The entry is:

Judgment vacated.

2. The Legal Services Corporation Act provides funding to agencies to represent low-income people. In 1977, Congress amended the Act to prohibit courts from inquiring into questions of client eligibility. 42 U.S.C.A. § 2996e(b)(1)(B) (1994). *See Mitchell v. Frank Morris Pontiac–Buick–GMC, Inc.,* 395 So.2d 51, 52–53 (Ala.1981) (holding that § 2996e(b)(1)(B) prohibits trial court from determining issue of representation and citing similar cases); *see also DeMichele v. Waltham Div. Dist. Court Dep't,* 417 Mass. 243, 629 N.E.2d 982, 984–85 (1994) (interpreting similar state statute and holding trial court prohibited from determining eligibility of legal services client).