STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          Docket No. AP-2000-50



FILED AND ENTERED
SUPERIOR COURT

JUL 2 0 2001

PENOBSCOT COUNTY

FCM - PEN - 7/20/2001

OFFICE OF ADVOCACY      )
        Petitioner,     )
                        )
        v.              )               **ORDER**
                        )
BANGOR MENTAL HEALTH    )
INSTITUTE,              )
        Respondent.     )

This matter is before the Court on Respondent, Bangor Mental Health Institute's, Motion to Dismiss and For Sanctions. For the following reasons, Respondent's Motion is GRANTED in part and DENIED in part.

## FACTS AND PROCEDURAL HISTORY

On November 22, 2000, the Office of Advocacy ("OOA") filed a Petition for Review of the Commissioner's October 26, 2000 decision, AP-2000-50.[1] Petitioner alleges, without limitation that the Commissioner of the Department misapprehended the following facts:

> 1. The patient complained on May 24 that her passes, including escort passes, were denied unless she bathed daily, or every other day, and that she complained of this at her (RTP) Rolling Treatment Plan meeting;
> 2. The RTP of May 18 shows that after reading her plan and asking questions, she refused to sign;
> 3. The staff continued to insist on the plan ignoring the patient's wishes, according to the entry of May 19;

---

1. The OOA claims it is aggrieved by the findings, conclusions and decision of the Department dated October 26, 2000.

4. Escorted passes were ordered on May 22 until Dr. Anderson could evaluate her on the morning of the 23rd based on her angry response she gave to staff person B.M. "You're a f... a.... All you want to do is get in my pants." The same "f..." word was used earlier in the day several times to another staff member;

5. Escorted passes were ordered on May 23rd and a psychiatric emergency declared on the ground she was "threatening, refusing treatment, and actively psychotic;

6. There was no threat of imminent harm to her or any other person and she did not present a safety risk, as a matter of law, requiring that treatment be imposed without her consent based on the chart dating from the time of her admittance following a community placement.

OOA requests:

findings and conclusions sustaining the appeal along with an Order against Respondent BMHI directing BMHI, and its agents and employees to cease and desist from: declaring psychiatric emergencies without specific articulable documented facts that the patient is immediately at risk of harming self or others; refusing passes off the locked wards against the consent of the patient in the absence of a psychiatric emergency; and conditioning passes off the locked ward on the patient's willingness to accept other treatment methods.

On December 13, 2000, Respondent filed a "Motion to Dismiss the Office of Advocacy's Petition for Review of Final Agency Action and for Sanctions pursuant to M.R.Civ.P. Rule 11" on grounds that this Court on two prior petitions determined that the Office of Advocacy does not have authority or standing to file petitions on behalf of itself in court, stating "even if that authority existed, the Attorney General has not authorized

the Office of Advocacy to file this action nor has it authorized Attorney Keenan to represent the Office of Advocacy in the courts of Maine," and OOA has failed to allege any facts that demonstrate actual deprivation in this case sufficient to confer standing.

Petitioner's response cites to Risinger v. Concannon, 117 F. Supp. 2d 61 (D. Me. 2000), in which case the Court granted The Disability Rights Center of Maine, Inc., ("DRC"), standing under federal law and the corresponding Maine statute to sue on behalf of minor plaintiffs. Petitioner claims (1) The OOA is a Person and has standing because aggrieved by agency action and that DRC is the Office of Advocacy's sister agency in the Advocacy Program pursuant to 1995 RRMHS Pt. A. II. A; (2) that the Office of Advocacy has both statutory and regulatory standing to proceed on behalf of the patient, and (3) the patient would have standing in her own right because the purpose of the OOA is germane to the claim brought; and (4) the OOA does not need Attorney General authorization prior to filing a Rule 80C appeal because given authority under 34-B M.R.S.A. § 1205.

Upon OOA's request, the Court suspended its ruling on the Respondent's Motion until the Law Court decided the appeal of Lindquist v. Bangor Mental Health Institute, AP-00-20. The Law Court, in vacating this

Court's October 25, 2000 decision in <u>Lindquist,</u> found it unnecessary to interpret 34-B M.R.S.A. § 1205 because:

> Lindquist's attorney was furnished to her through an agency established by the government to represent a particular set of clients. In this respect the Office of Advocacy is similar to numerous agencies in this country funded by the federal, state or local governments or established by educational institutions or charitable entities to furnish legal services to low-income people, disabled people, . . . and other categories of people.

<u>Lindquist</u>, 2001 ME 72, ¶ 8, 770 A.2d at 618; <u>see also</u> <u>Lindquist</u>, 2001 ME 72, 770 A.2d at 619 n.2. (citing 42 U.S.C.A. § 2996e(b)(1)(B) (1994) which prohibits courts from inquiring into questions of client eligibility).

The <u>Lindquist</u> decision, finding the OOA authorized to represent BMHI clients in court, however, does not resolve the issue here of whether the OOA is authorized to bring suit on its own behalf, or on behalf of PJ, and if so, whether it meets standing requirements to bring suit.

## ANALYSIS

### I. MOTION TO DISMISS

"A motion to dismiss tests the legal sufficiency of the complaint." <u>Livonia v. Town of Rome</u>, 1998 ME 39 ¶5, 707 A.2d 83, 85 (citing <u>Richards v. Soucy</u>, 610 A.2d 268, 270 (Me. 1992). For the purposes of a motion made pursuant to Rule 12(b)(6), "the material allegations of the complaint must be taken as admitted." <u>Id</u>. When reviewing a dismissal, we examine the

complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. See id. "A dismissal should only occur when it appears 'beyond doubt that [the] plaintiff[s] [are] entitled to no relief under any set of facts that [they] might prove in support of [their] claim.'" McAfee v. Cole, 637 A.2d 463, 465 (Me. 1994) (quoting Hall v. Board of Envtl. Protection, 498 A.2d 260, 266 (Me. 1985).

## II. OOA's STATUTORY AUTHORITY TO ADVOCATE FOR THE PROTECTION OF THE DEVELOPMENTALLY DISABLED

Both federal (42 U.S.C. §§ 15001 et seq. and §§18001 et seq.[2]) and

---

2. 42 U.S.C. § 10801 of the Restatement of Bill of Rights for Mental Health Patients states at (b) The purposes of this chapter are--
to ensure that the rights of individuals with mental illness are protected; and
(2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will--
(A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; . . ..
Section 10805 (a) states: . . . A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall--
(1) have the authority to-
(A) investigate incidents of abuse and neglect of individuals with mental illness . . .;
(B) pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are

state laws (5 M.R.S.A. §§ 19501 et seq.[3] & 34-B M.R.S.A. §§ 1001 et seq.) address the rights of mentally ill patients. 42 U.S.C. § 15043 and 5 M.R.S.A. § 19502 both require the designated agency to be independent of any state or private agency that provides treatment, services or habilitation. 42 U.S.C. §10805, however, specifically provides the system "(2) be independent of any agency in the State which provides treatment or services (other than advocacy services) to individuals with mental illness" 42 U.S.C. § 10805 (a)(2) (1995 & Supp. 2001). Additionally, the statutes do not state whether the Office of Advocacy is a designated agency pursuant to Title 5. 34-B M.R.S.A. § 1205 (1988 & Pamph. 2000).

Despite statutory language, the fact the OOA is not independent of a

---

receiving care or treatment in the State; and
(C) pursue administrative, legal, and other remedies on behalf of an individual who-
(i) was an individual with mental illness' and . . .
(2) be independent of any agency in the State which provides treatment or services (other than advocacy services) to individuals with mental illness; . . .

42 U.S.C. §§ 10801 & 10805 (1995 & Supp. 2001).

3. Maine's policy is to ensure legal and human rights of disabled persons and mentally ill individuals residing in the State are protected through the establishment of a protection and advocacy system pursuant to 42 U.S.C. § 6042 et seq. and § 10801 et seq."
5 M.R.S.A. § 19501 (1989 & Pamph. 2000).

state agency providing listed services, that its advocates are state employees, the Law Court's finding in Child Dev. Services v. Attorney General, 2000 ME 177, 760 A.2d 630; the prior unappealed decision in AP-00-18; and the fact the when the OOA sues BMHI, Petitioner and Respondent are essentially the same party, United Feldspar and Minerals Corp., 141 Me. 7, 10; 38 A.2d 164 (1944); this Court, because the Lindquist Court found the OOA authorized to represent clients in court, next addresses whether the OOA would have standing to petition the Court on its own behalf and/or on behalf of PJ.

## III. STANDING

Petitioner cites Risinger, a case outlining the standing doctrine, in which the DRC, an independent agency, sued the Maine Department of Human Services and Maine Department of Mental Health and Mental Retardation and Substance Abuse Services on its own behalf and on behalf of minor plaintiffs. This Court, noting that Risinger is distinguishable because DRC is clearly an independent agency, adopts the Risinger court's summary of the standing doctrine.

The Risinger court found that the "standing doctrine recognized that it may be permissible for an organization to sue on behalf of itself, as well as to have the ability to sue on behalf of others in certain

circumstances." Id. at 67. Noting that the two federal statutes only require the "States to confer standing on an organization and do not independently do so," the Risinger court found the language of 5 M.R.S.A. § 19505 "clearly constitutes a positive grant of standing by the Maine Legislature" and that DRC had been granted standing to sue on behalf of the minors. Risinger, 117 F. Supp. 2d at 70. Here, the Court, based on the Law Court's finding that the OOA is an agency similar to agencies such as DRC and the Risinger decision, for purposes of its standing analysis, assumes 5 M.R.S.A. § 19505 grants OOA authority to petition the court, and next addresses whether OOA meets standing requirements to sue on its behalf or on behalf of PJ. The Court, in doing so, does not overturn its finding in AP-00-18.

### A. OOA's Standing to sue on its on behalf

The finding in Lindquist that the OOA is similar to other agencies funded to represent a specific group of clients, does not hold that OOA can sue on its own behalf. In Risinger, Plaintiff, DRC, alleged that Defendants "failed to provide services to DRC's legally protected interest," and that "this injury is concrete, particularized, actual and imminent, and caused by Defendant's conduct and likely to be redressed in a favorable decision." The Court found the legal conclusions insufficient to meet Plaintiff's

burden of pleading standing even when assuming the truth of factual allegations and drawing all reasonable inferences in favor of Plaintiff as required when resolving a motion to dismiss. Risinger, 117 F. Supp. at 68. In doing so, the Court discussed the First Circuit's "heightened pleading requirement for the purposes of standing, requiring a plaintiff to 'set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing.' U.S. v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992)." Id. Here, OOA lists the alleged Commission errors with respect to PJ's grievance and summarily alleges it is "aggrieved by the findings, conclusions, and decision of the Department dated October 26, 2000 . . .." Accordingly, OOA has not pleaded any facts pertaining to its requisite injury, causation, or likelihood of redress needed to sustain standing to sue on its own behalf. Accordingly, this Court need not find whether OOA has authority to petition the Court on its own behalf because, even if authorized, OOA lacks standing.

**B. OOA's Standing to Sue on Behalf of PJ**

An agency may have associational standing if it meets two prongs of a three-part test set out in Hunt. United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551, 116 S. Ct. 1529, 1533 (1996); Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333,

343-44, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The Court in Pennsylvania Protection and Advocacy v. Houston, 136 F. Supp.2d 353 (E.D. Pa. 2001) found Article III limitations on standing required the satisfaction of two prongs of the Hunt three-part test. Thus, to show associational standing, the OOA would have to first demonstrate that "its members would otherwise have standing to sue in their own right," and secondly, the interests which the organization "seeks to protect" must be "germane to the organization's purpose." Pennsylvania Protection and Advocacy v. Houston, 136 F. Supp.2d 353, 364 (E.D. Pa. 2001).[4]

OOA, in its brief, argues standing to sue on behalf of PJ. OOA's Petition, however, is only on its own behalf, not on behalf of patient, PJ.[5] Furthermore, PJ is no longer at BMHI. That fact alone affects the analysis of PJ's standing, and, in turn, OOA's standing. Accordingly, this Court finds OOA's Petition is not one which entitles OOA to "associational standing." Accordingly, Respondent's Motion to Dismiss is granted.

## IV. SANCTIONS

---

4. The Houston court found the "statute permits the PP & A to file claims on behalf of individuals with mental illness and developmental disabilities to the full extent of Article III." See Risinger, 117 F. Supp.2d at 69.

5. Paragraph 5 states: "Petitioner OOA, is aggrieved."

Respondent requests sanctions based on this Court's October 25, 2000 decision in AP-00-18. Petitioner did not appeal that decision. In view of the Law Court's decision in Lindquist v. BMHI, AP-00-20, in which Attorney Keenan prevailed, and case law, this Court will not impose sanctions. Furthermore, 34-B M.R.S.A. §1205 (7) provides that "Advocates may not be disciplined or sanctioned for any actions taken on behalf of clients." 34-B M.R.S.A. § 1205 (7) (Supp. 2000).

Respondent's motion to dismiss also requests this Court to impound the attachments to Mr. Keenan's petition in order to prevent public disclosure of the patient's identity. Petitioner indicates that PJ, now that "she is out of the hospital and is not concerned with repercussions," does not request impoundment. The Court does not order impoundment.

The entry is:

Respondents' Motion to Dismiss is GRANTED as to its Request for Dismissal and DENIED as to Sanctions.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: July 20, 2001

Hon. Francis C. Marsano
JUSTICE, SUPERIOR COURT

Date Filed __11/22/00__ __Penobscot__ Docket No. __AP-2000-50__

County

Action ____Civil - 80C Appeal____

ASSIGNED TO JUSTICE FRANCIS C. MARSANO

OFFICE OF ADVOCACY      vs.      BANGOR MENTAL HEALTH INSTITUTE

| Plaintiff's Attorney     Petitioner | Defendant's Attorney     Responder |
|---|---|
| Arthur Keenan, Esq.<br>P O Box 926<br>Bangor ME 04402-0926 | STATE OF MAINE, DEPT OF ATTORNEY GENER<br>SIX STATE HOUSE STATION<br>AUGUSTA, ME 04333-0006<br>BY: Christopher C. Leighton, Asst A.G.<br>Katherine Greason, AAG |

| Date of Entry | |
|---|---|
| 11/22/00 | Petition for Review of Final Agency Action (5 MRSA §11001, et seq. & Rule 80C MRCivP) filed. Attachments |
| 12/13/00 | Motion to Dismiss the Office of Advocacy's Petition for Review of Final Agency Action and for Sanctions Pursuant to M.R. Civ.P. Rule 11 with Incorporated Memorandum of Law filed by Department of Mental Health, Mental Retardation and Substance Abuse Services, Bangor Mental Health Institute. (With attachments 1 thru 4) |
| 12/13/00 | Affidavit of Christopher C. Leighton, Asst Attorney General filed. |
| 12/13/00 | Answer of Respondent Department of Mental Health, Mental Retardation and Substance Abuse Services, Bangor Mental Health Institute filed. |
| 12/13/00 | Request for Hearing on Motion to Dismiss filed by Respondent. |
| 1/3/01 | Response to Motion to Dismiss and for Sanctions filed by Petitioner Office of Advocacy. (with attachments) |
| 1/3/01 | Complete copy of the Regulations (1995 RRMHS) cited in Brief filed by Petitioner Office of Advocacy. |
| 1/24/01 | Motion to Suspend Ruling on Motion to Dismiss and for Sanctions filed by Petitioner. |
| 2/2/01 | Order on Motion filed. Pursuant to the Petitioner's Motion to Suspend Ruling on the Motion to Dismiss and for Sanctions dated December 12, 2000, It is Ordered: The Motion is granted. The Petitioner shall inform the Court as to the status of the Law Court action within 10 days of receipt of notice of a decision by the Law Court in the case of Lindquist v. BMHI, Law docket No. PEN-00-594. (Marsano, J.) Copy forwarded to attorneys of record. |