Louis DAILY, Plaintiff,

v.

CITY OF PHILADELPHIA,
et al., Defendants.

No. 99–CV–85.

United States District Court,
E.D. Pennsylvania.

May 8, 2000.

Louis G. Daily, Philadelphia, PA, pro se.

Tremelle I. Howard, City of Philadelphia Law Dept., Philadelphia, PA, for defendants.

Emily Zimmerman, Philadelphia, PA, Kathleen M. Farrelly, Asst. Dist. Atty., Philadelphia, PA, for Lynn Abraham, D.A., Defendant.

Donna G. Marshall, City of Philadelphia Law Dept., Asst. City Solicitor, Philadelphia, PA, for City of Philadelphia.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Now before me are two motions to dismiss. One motion dismiss was filed by defendants City of Philadelphia, Police Commissioner John Timoney, Police Commissioner Richard Neal, Police Officer Brock, Detective Angelucci, Mark Jones, John J. Norris, Chief Inspector John Maxwell, Police Officer McCreery, Sergeant Schwartzl, Police Officer Nardo and Gerry Ross (collectively "City defendants"). The other motion to dismiss was filed by Defendant Lynne Abraham, the District Attorney of Philadelphia County ("District Attorney's Office").[1] The City defendants and the District Attorney's Office move to dismiss plaintiff's *pro se* complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). I will dismiss the amended complaint, *sua sponte*, because the court lacks subject matter jurisdiction.

## I. Background

The following facts are taken from the plaintiff's second amended complaint and presented in the light most favorable to the plaintiff.

Plaintiff alleges that the "Philadelphia Police Department, District Attorney, and the City of Philadelphia have acted in con-

cert to unlawfully arrest me and harass me because of presumptions about the behavior of my gender (male), and to deprive me of my home and contact with my children." Pl.Sec.Am.Comp. at 1. Plaintiff contends that "[e]ven if these persons and entities did not act consciously to deprive me of my rights due to gender, the policies of these persons and entities have this effect. Petitioner believes, however, that these persons and entities agree with each other that males in general present a grave danger to females and that these persons and entities conspire to discriminate on the basis of gender." *Id.*

Plaintiff asserts that in November 1996 he was evicted from the home he shared with his wife and children (the "marital home") and separated from his children when his wife filed a Protection from Abuse ("PFA") petition. While the PFA restraining order was in effect, plaintiff was arrested twice by the Philadelphia Police. First, on January 6, 1997, he was arrested when he was near the marital home, for the purpose of having police officers serve contempt of custody papers on his wife. Plaintiff called the police when he was two blocks from the marital home and was told to meet the police on a corner near the marital home. When plaintiff reached this corner, he was arrested for contempt of the PFA restraining order. Plaintiff also alleges that after this arrest he was held for 24 hours in "horrid" conditions, "[t]here were no blankets and meals were cheese sandwiches (no condiments) and ice tea." *Id.* at 2. Plaintiff asserts that he was later found not guilty on this charge.

Second, on April 8, 1997, plaintiff was arrested for simple and indecent assault. Plaintiff states that Judge Pechkurow, of the Philadelphia Court of Common Pleas,

---

1. I interpret plaintiff's claims against the District Attorney as claims against the District Attorney in her official capacity. In any event, plaintiff could not state a cause of action against the District Attorney in her individual capacity because the District Attor- ney would be entitled to absolute prosecutorial immunity. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Boyd v. Biggers,* 31 F.3d 279 (5th Cir.1994).

ordered that he be allowed in the marital home for a weekend visit with his children. Judge Pechkurow advised plaintiff's wife to vacate the marital home for the weekend. Plaintiff's wife refused to vacate the home for the weekend and after the weekend visit his wife pressed charges against him. Plaintiff contends that he was later found not guilty.[2] After this incident plaintiff complained to the police and/ or other government officials that his wife made false and misleading statements leading to his arrest. Plaintiff believes his complaints against his wife were largely ignored. Additionally, two times during the pendency of the restraining order (January 1997 and March 27, 1998) the police removed plaintiff's children from his custody. On both occasions plaintiff made complaints regarding the police officers to the Internal Affairs Division and the officers were later exonerated.

Plaintiff alleges that the PFA act was adopted upon the assumption that men are more dangerous than woman in domestic situations. Plaintiff quotes certain statistics that he suggests support his theory that men are not more dangerous in domestic situations then woman. Plaintiff contends that "[t]his system has resulted in an egregious deterioration of the principles of due process, equal protection and the right to be deemed innocent until proven guilty." Pl.Sec.Am.Comp. at 3. Specifically, plaintiff claims that the City of Philadelphia "violated his rights under the due process and equal protection provisions of the U.S. Constitution, the corresponding sections of the Pennsylvania Constitution, the Civil Rights Act of 1871, and the Pennsylvania Human Relations Act." *Id.* at 3.

Plaintiff requests the following relief: (1) judicial review of the PFA act in terms of its consistency with the U.S. Constitution; (2) a general overhaul of the condition of holding cells in Philadelphia; (3) open court hearings for domestic relations hearings in Philadelphia; (4) judicial review of the procedure for investigating citizens complaints in Philadelphia; (5) judicial review of the procedures of the District Attorney for investigating charges leveled against women by men compared to the procedures for investigating charges leveled against men by women; and (6) an amount appropriate under the circumstances.

## II. Discussion

A federal district court has limited subject matter jurisdiction. Lack of subject matter jurisdiction may be raised at any time by the court *sua sponte.* *See Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.,* 905 F.2d 42, 45 (3rd Cir. 1990); *see also Liakakos v. CIGNA Corp.,* 704 F.Supp. 583, 584 n. 1 (E.D.Pa.1988). A proper motion for defendants to file would have been a motion pursuant to Rule 12(b)(1), challenging subject matter jurisdiction. Neither the City defendants nor the District Attorney's Office requests dismissal of this case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Rule 12(b)(1), however, will be used as a guide for the court's *sua sponte* determination of lack of subject matter jurisdiction.

A Rule 12(b)(1) challenge may be either a factual or facial challenge to the complaint. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977). In the case of a factual challenge, the court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *See id.* Therefore, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *See id.* The plaintiff has the

---

**2.** Plaintiff acknowledges that his wife's testimony was used as probable cause for his arrest.

burden of proving that jurisdiction exists. *See Mortensen*, 549 F.2d at 891.

■■■ Under the *Rooker–Feldman* doctrine a federal district court does not have subject matter jurisdiction over challenges to state court decisions. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). A federal claim is an impermissible challenge to a state court decision under the *Rooker Feldman* doctrine when entertaining the federal claim would be equivalent to an appellate review of the state court order. *See FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3rd Cir.1996). The Third Circuit explained that "federal district courts lack subject matter jurisdiction to review final adjudications of a state's highest court or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.'" *Blake v. Papadakos*, 953 F.2d 68, 71 (3rd Cir.1992) (quoting *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. 1303).[3] Additionally, the doctrine applies not only to claims that were actually adjudicated in state court, but also to claims that could have been raised in state court. *See Valenti v. Mitchell*, 962 F.2d 288, 296 (3rd Cir.1992) (stating that "[w]e reject

... [plaintiff's] argument that since they never raised, and the ... [state court] never considered, their ... [constitutional] challenges, *Rooker–Feldman* cannot bar them from pursuing these claims in federal court."). Therefore, any federal action in which the requested relief would reverse or nullify the ruling of a state court decision is barred under the *Rooker–Feldman* doctrine.[4] *See FOCUS*, 75 F.3d at 840.

■■■ On February 19, 1998, the Family Court Division of the Court of Common Pleas for the County of Philadelphia ("Court of Common Pleas") issued a final protection order in *Daily v. Daily*, stating in part that "defendant, Louis G. Daily, shall refrain from abusing, harassing, and/or threatening the plaintiff Madeline G. Daily or placing her ... in fear of abuse in any place where she ... may be found."[5] *Daily v. Daily*, 8351 Jan. Term 1998 (Phila.CCP, Feb. 19, 1998) (Robinson, J.). The Court of Common Pleas also ordered that "defendant is enjoined and prohibited from living at, entering, attempting to enter or visit the residence [of Madeline G. Daily] ... and the plaintiff [Madeline G. Daily] is granted exclusive possession and control of the premises." *Id.* The order also provided for additional relief in that defendant (Louis Daily) was to pay counsel fees in the sum of $750.00

---

**3.** In analyzing whether a federal claim is inextricably intertwined with a state court adjudication, the Third Circuit, in *Centifanti v. Nix*, 865 F.2d 1422 (3rd Cir.1989), quoting Justice Marshall's concurrence in *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), explained that:

> [A]s a first step ... the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state court judgment.
> *Centifanti*, 865 F.2d at 1430 (quoting *Pennzoil Co.*, 481 U.S. at 25, 107 S.Ct. 1519 (Marshall, J., concurring)).

**4.** The *Rooker–Feldman* doctrine also applies to final decisions of lower state courts. *See Port Authority Police Benevolent Assoc., Inc. v. Port Authority of New York and New Jersey Police Dept.*, 973 F.2d 169, 177–78 (3rd Cir. 1992).

**5.** Although the state court opinions are not attached to plaintiff's second amended complaint or defendants' responses, consistent with Rule 12(b)(1), in evaluating the court's subject matter jurisdiction, the court may look outside the pleadings. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891–92 (3rd Cir.1977).

The state court opinions, cited in this opinion, were attached to plaintiff's amended complaint in a later filed case brought by the same plaintiff. *See Daily v. Daily*, 96 F.Supp.2d 463 (E.D.Pa. 2000) (Brody, J.).

and $1,200.00 in lost wages to plaintiff (Madeline Daily). The Court of Common Pleas' February 19, 1998 order was to remain in full force and effect through February 18, 1999.

After the plaintiff appealed the Final Protection Order, Judge Robinson issued an opinion further explaining the Final Protection Order and requesting that his order be affirmed.[6] *See Daily v. Daily*, Jan. Term 1998, No. 8351 (Phila.CCP). Judge Robinson addressed plaintiff's contention that the PFA act is unconstitutional in that it violates the Constitution of Pennsylvania and the Constitution of the United States. Judge Robinson found that plaintiff "fails to specify what provision of either Constitution violates the [PFA] Act. The provisions of the [PFA] Act have been examined by the appellate courts on a number of occasions and been upheld." *Id.* at 5–6 (citing *Eichenlaub v. Eichenlaub*, 340 Pa.Super. 552, 490 A.2d 918 (1985) (lack of jury trial for criminal contempt upheld); *Commonwealth v. Zerphy*, 332 Pa.Super. 388, 481 A.2d 670 (1984) (double jeopardy); *Boyle v. Boyle*, 12 Pa.D. & C.3d 767 (1979) (due process)).

The Superior Court of Pennsylvania ("Superior Court") affirmed the Court of Common Pleas' decision. *See Daily v. Daily*, No. 734 Phila. 1998 (Pa.Super.1998). The Superior Court also addressed plaintiff's constitutional arguments. First, the Superior Court rejected plaintiff's contention that the PFA proceedings are criminal in nature. While the Superior Court acknowledge that "[w]e have characterized PFA proceedings as 'quasi-criminal.' ... Nevertheless, we have rejected attempts to invoke the panoly of constitutional rights afforded criminal defendants." *Id.* at 7. The Superior Court stated that "[w]e have explained that the PFA act is 'not, nor was meant to be, a statute penalizing past criminal conduct. Rather, the primary goal of the act is not retrospective punishment but advance prevention of physical and sexual abuse.'" *Id.* (quoting

*Snyder v. Snyder*, 427 Pa.Super. 494, 501, 629 A.2d 977, 981 (1993)).

Next, the Superior Court addressed the six separate constitutional arguments raised by plaintiff. First, the Superior Court rejected the plaintiff's attempt to invoke the Fourth Amendment because the plaintiff has not been subject to a search or seizure. *See id.* at 7–8. Second, the Superior Court held that plaintiff's claim that the PFA act violates his procedural due process guarantees is meritless because the Court has previously held that the procedures established by the PFA act satisfy the constitutional guarantees of due process. *See id.* at 8 (citing *R.G. v. T.D.*, 448 Pa.Super. 525, 529, 672 A.2d 341, 343 (1996)). Third, the Superior Court dismissed plaintiff's claim that his Sixth Amendment rights were violated stating that "assuming *arguendo* that indigent PFA defendants are entitled to appointed counsel, appellant has not argued or proven his indigence. Moreover, appellant was represented by paid counsel in the hearings below and never requested appointed counsel. Accordingly, we conclude that this claim was waived." *Id.* Fourth, the Superior Court held that plaintiff's claim, that he was entitled to a jury trial because of the amount in controversy, lacked merit. Plaintiff's contention that his right to a jury trial was denied was waived because he failed to timely demand a jury trial. *See id.* Fifth, the Superior Court rejected plaintiff's contention that the $1,950.00 award for Madeline Daily's lost wages and counsel fees was an unconstitutionally excessive fine. The $1,950.00 amount was not a fine, but rather a damage award between private parties and therefore, the constitutional proscriptions against excessive fines are inapplicable. *See id.* at 9 (citing *Browning–Ferris v. Kelco Disposal, Inc.*, 492 U.S. 257, 259–60, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989); *Geffen v. Baltimore Markets*, 191 A. 24, 28, 325 Pa. 509 (1937)). Finally, the Superior Court rejected plaintiff's assertion that the PFA

6. Judge Robinson's opinion does not appear     to be dated.

act is administered in a fashion that discriminates against the male gender, violating constitutional guarantees of equal protection. The Superior Court reasoned that "[t]he fact that women are more likely to seek PFA relief does not suggest that men are treated disparately when they seek relief.... As appellant's offered evidence does not support a finding of discriminatory administration, his claim lacks merit." *Id.* at 10. On April 7, 1999, plaintiff's petition for allowance of an appeal to the Supreme Court of Pennsylvania was denied. *See Daily v. Daily,* No. 633 E.D. Allocatur Docket 1998 (Pa.1999).

Plaintiff's second amended complaint states that the "Philadelphia Police Department, District Attorney, and the City of Philadelphia have acted in concert to unlawfully arrest me and harass me because of the presumption about the behavior of my gender (male), and to deprive me of my home and contact with my children." Pl.Sec.Am.Comp. at 1. Additionally, plaintiff alleges that "[e]ven if these persons and entities [defendants] did not act consciously to deprive me of my rights due to gender, the policies of these persons and entities have this effect. [Plaintiff] believes, however, that these persons and entities agree with each other that males in general present a grave danger to females and that these persons and entities conspire to discriminate on the basis of gender." *Id.* Furthermore, plaintiff maintains that "[t]his system [enforcement of the PFA act] has resulted in an egregious deterioration of the principles of due process, equal protection and the right to be deemed innocent until proven guilty." *Id.* at 3. Plaintiff also alleges that his due process and equal protection rights were violated.

Plaintiff's response to the City defendants' and the District Attorney Office's motions to dismiss reiterates that this claim is based on the imposition of the PFA act in such a way that it violates plaintiff's constitutional rights. For example, plaintiff states that "[t]he City of Philadelphia and District Attorney's office vigorously prosecute complaints made by females against males but not vice versa, out of a belief that males are responsible for domestic abuse. This offends the due process and equal protection safeguards of the U.S. and Pennsylvania Constitutions." Pl.Resp. at 1. Plaintiff alleges that "[i]n the extant case, this discrimination resulted in the Plaintiff's arrest for contempt of a restraining order in the face of obvious exculpatory evidence and in the removal of Plaintiff's children from his car at the behest of his wife. While under arrest, plaintiff was held in a holding cell in horrid conditions, violating the principle of being deemed innocent until proven guilty." *Id.* In plaintiff's response to the District Attorney's motion to dismiss he states in part that "the District Attorney violated his right to the equal protection of the law and cooperates with the Philadelphia Police in vigorously prosecuting allegations of male abuse of females, but not vice versa." Pl.Resp. at 2. Plaintiff contends that he "was discriminated against because he is male and there is a presumption among government agencies and officials that males are largely responsible for domestic abuse." *Id.*

Even providing the necessary deference to plaintiff's *pro se* complaint, he fails to establish federal subject matter jurisdiction. *See Royce v. Hahn,* 151 F.3d 116, 118 (3rd Cir.1998) (citing *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969) (petition prepared by a *pro se* prisoner may be inartfully drawn and should be read "with a measure of tolerance")). As is clear from the state court opinions, plaintiff raised the same due process and equal protection claims in state court. The Superior Court rejected plaintiff's assertion that the PFA act is administered in a fashion that discriminates against the male gender, reasoning that "[t]he fact that women are more likely to seek PFA relief does not suggest that men are treated disparately when they seek relief." *Daily v. Daily,* No. 734 Phi-

la.1998, at 10 (Pa.Super.1998). Plaintiff does nothing more than rehash claims that were made or could have been made in the state lawsuits. Therefore, plaintiff's claims are barred by the *Rooker–Feldman* doctrine. Plaintiff's remedy is to apply for *writ of certiorari* to the United States Supreme Court. Though the United States Supreme Court would have appellate jurisdiction over plaintiff's claims, pursuant to 28 U.S.C. § 1257, this court does not.

■ Even if this court did have subject matter jurisdiction, plaintiff's second amended complaint may properly be dismissed pursuant to Rule 12(b)(6). Plaintiff's second amended complaint fails to state a cause of action against any defendant for a violation of his constitutional rights. Plaintiff makes conclusory allegations suggesting that his due process and equal protection rights were violated by the enforcement of the PFA act. I interpret plaintiff's claim as follows: the enforcement of the PFA act has a disparate impact upon men and therefore, violated the plaintiff's constitutional rights.

The Supreme Court, in evaluating whether a state statute discriminated against women in violation of the Equal Protection Clause of the Fourteenth Amendment, held that:

> When a statute gender-neutral on its face is challenged on the ground that is effects upon women are disproportionately adverse, a twofold inquiry is thus appropriate. The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious gender-based discrimination.... In this second, inquiry, impact provides an "important starting point," ... but purposeful dis-

crimination is "the condition that offends the Constitution."

*See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 274, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (citations omitted). When the statute is gender neutral, the dispositive question is whether the plaintiff has shown that a "gender-based discriminatory purpose has, at least in some measure," shaped this statute. *Id.* at 276, 99 S.Ct. 2282. Additionally, " 'discriminatory purpose,' ... implies more than intent as volition or intent as awareness of consequences.... It implies that the decisionmaker, in this case the state legislature, selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279, 99 S.Ct. 2282.

The PFA act allows any adult person, without regard to gender, to seek relief from abuse under the provisions of the act.[7] *See* 23 Pa.C.S.A. § 6101, *et seq.* Therefore, the PFA act is facially gender neutral. Consequently, I must evaluate if the alleged adverse effect of the PFA act against men reflects invidious gender-based discrimination. Viewing plaintiff's complaint in the most favorable light, he fails to allege that the state legislature enacted the PFA act because of its adverse effects upon men. Even if the PFA act is utilized more often by woman seeking protection from men, standing alone, this assertion does not state a claim of disparate impact based on gender. If the pool of people who request protection pursuant to the PFA act are more likely to be woman, then a corresponding disproportionate number of PFA act cases against men may be permissible. *See Feeney*, 442 U.S. at 273, 99 S.Ct. 2282. Therefore, even if plaintiff's complaint was not barred because of the lack of subject matter juris-

---

7. The purpose of the PFA act is to "protect victims of domestic abuse, and it does so through numerous provisions that enable courts to respond quickly and flexibly to both early signs and subsequent acts of abuse with the issuance of protection orders." *Commonwealth v. Snell*, 737 A.2d 1232, 1235 (Pa.Super.1999).

diction, plaintiff failed to state a claim pursuant to Rule 12(b)(6).

In the absence of any supportable federal claims, I would decline to exercise pendant jurisdiction over plaintiff's state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 728–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### ORDER

AND NOW, this ___ day of May, 2000, I **ORDER** that this case is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.