**PENNSYLVANIA PROTECTION AND ADVOCACY, INC.,[1] Plaintiffs,**

**v.**

**Feather HOUSTON, in her official capacity as Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, Defendant.**

**No. CIV.A. 00–CV–4332.**

United States District Court, E.D. Pennsylvania.

March 29, 2001.

---

1. On February 15, 2001, we granted Defendant's uncontested motion for summary judgement as to Mitchell Landsman.

Ilene W. Shane, Stephen F. Gold, Philadelphia, PA, for Plaintiffs.

Thomas J. Blazusiak, Department of Public Welfare, Office of Legal Counsel, N.E. Region, Allentown, PA, for Defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Presently before this Court is the Defendant's Motion to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction). For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

### A. Factual Background

Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., establishes the federal Medical Assistance program. The program is a cost sharing arrangement between the states and the federal government, whereby the federal government reimburses some state expenses if a state elects to provide financial assistance to those individuals whose incomes and re-

sources are insufficient to cover the costs of their medical care. 42 U.S.C. § 1396, Am. Compl. ¶¶ 20–21. Pennsylvania has chosen to participate in the program and has adopted a state plan pursuant to the federal regulations. *Id.* at ¶ 24.

Under the program, state expenses for nonresidential community-based services are not automatically part of the cost sharing arrangement. *Id.* at ¶¶ 25–28. States can obtain a "home and community-based services" ("HCB") waiver from the federal Health Care Financing Administration. 42 U.S.C. § 1396n(C). This waiver allows states to include services which prevent individuals from being institutionalized as Medical Assistance, and thereby receive additional reimbursement from the federal government. *Id.*

Pennsylvania applied for and received an HCB waiver. This waiver is known as Person/Family Directed Support ("P/FDS") Waiver. Am. Compl. at ¶ 1. In Count I of the Amended Complaint, Plaintiff alleges that the Defendant has failed to fully implement the waiver. *Id.* at ¶¶ 35, 43–63. Count II contends that the Pennsylvania Department of Public Welfare ("DPW") violated federal regulations to furnish medical assistance with "reasonable promptness." *Id.* at ¶¶ 64–65. In Count III, Plaintiff alleges that the Defendant has failed to allow applications for services under the P/FDS Waiver. *Id.* at ¶¶ 66–68. Finally, Count IV asserts that the Defendant failed to allow for evaluations of individuals in violation of Title XIX. *Id.* at ¶¶ 69–70.

## B. Procedural Background

This action commenced on August 24, 2000, by and on behalf of plaintiffs Derek DeLong, Mitchell Landsman, and Saul Vasquez. These three plaintiffs sought to have the case certified as a class action lawsuit. We denied this request in an order dated October 25, 2000. We allowed the parties ninety days to conduct additional discovery as to whether the threshold requirements for the certification of a class action could be satisfied. This time period elapsed on January 23, 2001, and this Court has not been presented with any evidence that there is a group of plaintiffs who meet the threshold requirements for class certification.

While this action has been pending, Mr. DeLong, Mr. Vasquez, and Mr. Landsman, each became enrolled in and began receiving HCB waiver services under the P/FDS Waiver. On January 9, 2001, an Amended Complaint was filed. Mr. DeLong and Mr. Vasquez were dropped as plaintiffs apparently because they had become enrolled in and began receiving services under the P/FDS Waiver. Pl.'s Mem. at 3. Through the agreement of counsel, Pennsylvania Protection and Advocacy, Inc. (PP & A), was added. Def.'s Mem. at 2. The Defendants consented to the addition of PP & A on the express condition that they would retain the right to challenge the group's standing to bring this action. *Id.* Therefore, in the Amended Complaint, Mitchell Landsman, suing on his own behalf through his parents and without the aid of PP & A, became the sole individual alleging an injury in fact.

On February 9, 2001, the Defendant filed an uncontested motion seeking summary judgment as to Mr. Landsman's claims. The parties agreed that his claims were rendered moot by his enrollment in the P/FDS Waiver program on December 15, 2000. We granted this motion in an order dated February 14, 2001.

Thus, PP & A is now the sole plaintiff in this action. Although it is unclear from the face of the Amended Complaint, the Plaintiff argues in its Memorandum that it is suing both on its own behalf and as a representative suing on behalf of its constituents. Pl.'s Mem. at 10, 17. The De-

fendant moves for dismissal on the grounds that PP & A lacks standing.

## C. Standard of Review

 Fed.R.Civ.P. 12(b)(1) allows parties to file motions when a court's jurisdiction over the subject matter of the action is in question. A Rule 12(b)(1) motion may challenge jurisdiction based on the face of the complaint or its existence in fact. *See Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *Hunter v. United States*, No. 3:CV–00–0036, 2000 WL 1880257, *3–4 (M.D.Pa. Dec. 15, 2000). A factual challenge occurs, when a party disputes the existence of certain jurisdictional facts alleged in the complaint. *Carpet Group Int'l. v. Oriental Rug Imp. Ass'n, iNc.*, 227 F.3d 62, 69 (3d Cir.2000). In such a situation, the court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction. 549 F.2d at 891, *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Therefore, with a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." 549 F.2d at 891; *Daily v. City of Philadelphia*, 98 F.Supp.2d 634, 636 (E.D.Pa.2000). However, when the challenge is facial, the court must accept as true all well-pleaded allegations in the complaint and draw reasonable inferences in favor of the plaintiff. 549 F.2d at 891. This presumption of truthfulness does not force courts to credit "bald assertions," "unsupported conclusions," "unwarranted inferences," or "legal conclusions masquerading as factual conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997); *Hunter*, 2000 WL 1880257 at *3. Nor must a court presume that the plaintiff can prove facts it has not alleged. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir.1998).

 Regardless of whether the challenge is facial or factual, the plaintiff still bears the burden of persuasion. 549 F.2d at 891. Plaintiff is the one seeking to invoke the jurisdiction of this court, and it must demonstrate that the case is within our competence. *Turner v. Bank of North America*, 4 U.S. 8, 4 Dall. 8, 1 L.Ed. 718 (1799).

 Plaintiff argues that the Defendant asserted a facial challenge to PP & A's standing.[2] Pl.'s Mem. at 9. Defendant's Memorandum contains no discussion of Fed.R.Civ.P. 12(b)(1).[3] However, the Memorandum does mention construing the complaint in the light most favorable to the Plaintiff. Def.'s Mem. at 3. This statement suggests that the Defendant's attack on jurisdiction is facial. *See* 549 F.2d at 891. The Defendant's Memorandum also only discusses the Amended Complaint. It mentions no facts outside of that document. *See* Sur Reply at 2 (attacking Plaintiff for going beyond the scope of the motion). Finally, PP & A was only added as a party to this litigation in January 2001, and there has not yet been much discovery from which the Defendant could have gathered facts. For these reasons, we will construe Defendant's challenge as a facial attack on PP & A's standing. *See*

---

2. Plaintiff also argued that we could consider information outside of the pleadings. Pl.'s Mem at 9, *citing Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir.1997). *Robinson* holds that courts have the authority to examine information outside of pleadings if there is a factual challenge to jurisdiction. *Id.* While

we agree with Plaintiff that the Defendant has launched a facial attack on jurisdiction, we do not agree that *Robinson* is applicable here. *Id.*

3. The Motion itself states that the Defendant moves pursuant to Fed.R.Civ.P. 12(b)(1).

*Gould,* 220 F.3d at 176; *Poling v. K. Hovnanian Enter.,* 99 F.Supp.2d 502, 515 (D.N.J.2000)(court determines whether a Rule 12(b)(1) motion attacks the complaint as deficient on its face or whether the motion attacks the existence of subject matter jurisdiction in fact); *Hunter,* 2000 WL 1880257 at *3 (the court decides how to treat a Rule 12(b)(1) motion).

## II. DISCUSSION

### A. Standing Generally

 Federal courts are courts of limited jurisdiction. We are empowered to hear only such cases as are within the judicial power of the United States, as defined in the Constitution, and entrusted to us by Congress. Const. Art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority"). This is typically referred to as the Constitution's "case or controversy" requirement. *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Standing is a judicial concept which addresses this constitutional requirement as well as prudential concerns. *Warth v. Seldin,* 422 U.S. 490, 497, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The constitutional requirements are immutable. *Bennett v. Spear,* 520 U.S. 154, 161, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). They represent the absolute minimum which a plaintiff must show to bring their claim before a federal court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Even when these requirements are met, "a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to

assert a particular claim." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). These prudential limits are judicially imposed and Congress may override them by statute. *Id.* at 100, 99 S.Ct. 1601.

 The key element of the "case or controversy" requirement is that a plaintiff, based on the complaint, must establish that it has standing to sue. *Fair Hous. Council of Suburban Philadelphia v. Montgomery Publ'g, Co.,* 141 F.3d 71, 74 (3d Cir.1998) *quoting Raines,* 521 U.S. at 818, 117 S.Ct. 2312 (1997). The plaintiff must be able to demonstrate an injury in fact. *Montgomery,* 141 F.3d at 74. An injury in fact is: "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (citations omitted). This injury in fact must be causally connected to the conduct complained of. *Id.* In addition, the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. *Id.* Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S.Ct. 2130.

 Each of these elements of Article III standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation. *Bennett,* 520 U.S. at 167, 117 S.Ct. 1154; *Montgomery,* 141 F.3d at 74. Thus, the standard for determining standing is not static. *Id.* At the pleading stage, general factual allegations are sufficient. *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. In contrast, at the summary judgment stage, the plaintiff can no longer rest on mere

allegations, and must set forth evidence to support its claims. Fed.R.Civ.P. 56; *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130.

We will first consider whether PP & A has standing to sue in its own right. We will then examine whether PP & A has standing to sue as a representative of those individuals not receiving services under the P/FDS waiver.

### B. PP & A Has Standing to Sue on Its Own Behalf

An organization has standing to sue on its own behalf if the organization itself can satisfy the irreducible constitutional minimum requirements and prudential concerns do not point to the need for judicial restraint. *See Warth*, 422 U.S. at 511, 95 S.Ct. 2197 ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."). PP & A has standing to sue on its own behalf because it sufficiently alleged an injury in fact and prudential concerns do not preclude this case from going forward. *See Lujan*, 504 U.S. at 560–561, 112 S.Ct. 2130.

#### 1. Injury In Fact

Under the Developmental Disabilities Act ("DDA"), 42 U.S.C. § 6042,[4] the Commonwealth of Pennsylvania designated Plaintiff as the group with the responsibility to advocate for and protect the rights of individuals with developmental disabilities. Am. Compl. at ¶ 7. Plaintiff states that it has spent, "its time, money, and resources to advocate for an end to the waiting list for community services for Pennsylvanians with mental retardation," and that ending the waiting list is one of its priorities. *Id.* Plaintiff also alleges

that it has spent, "its time, money, and resources to counsel and assist the families of individuals with mental retardation who have been unable to access services under the P/FDS Waiver." *Id.* Plaintiff does not allege that its day to day operations or overall goals were impaired because of actions on the part of the Defendant.

Defendant argues that Plaintiff is an advocacy group and that it has engaged in no more, and no less advocacy than it normally would as a result of the alleged failure to fully and properly implement the P/FDS Waiver. Def.'s Mem. at 8. Although the Defendant's view that PP & A has not engaged in additional advocacy may be correct, we must accept Plaintiff's factual allegations and draw all reasonable inferences in its favor. *Mortensen*, 549 F.2d at 891. It is possible that the Defendant's alleged failings caused PP & A to spend more on advocacy than it normally would, or that the organization had to divert significant resources to advocate for more P/FDS services. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

Defendant also attacks Plaintiff's allegation that it has expended resources on counseling individuals and families, as too broad and unspecific to state an injury. Def.'s Mem. at 8. Construing the complaint in the light most favorable to the Plaintiff, we find that the PP & A has alleged a sufficient injury. *See Mortensen*, 549 F.2d at 891. At the pleading stage, general factual allegations of injury resulting from defendant's conduct are sufficient to withstand a motion to dismiss based on lack of standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. Plaintiff is not required to present specific proof as to the actual costs

---

4. This statute has since been repealed and replaced by 114 Stat 1677, PL 106–402, 2000 S 1809, Subtitle C, Sec. 143 (system re-

quired). The substance of the two sections was unchanged.

it incurred because of the Defendant's actions. *Id.*

## 2. Causation

 Plaintiff alleges that the Defendant: has not provided waiver services to the correct number of people (Count I), has refused to allow applications for such services (Count III), and that the Defendant failed to allow for evaluations of individuals who want such services (Count IV). Am. Compl. ¶¶ 57–63, 66–70. Plaintiff also alleges that the Defendant has not provided services with "reasonable promptness" in violation of 42 U.S.C. § 1396a(a)(8). *Id.* at ¶¶ 64–65. Plaintiff argues that, because of these actions, it had to spend its resources on counseling individuals who have been unable to receive home and community-based services or who have not received such services in a timely manner. Am. Compl. at ¶ 7; Pl.'s Mem. at 15. We find that the expenses for counseling are sufficiently connected to the conduct complained of to satisfy the causation requirement. *See United States v. SCRAP*, 412 U.S. 669, 688, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

The link between the advocacy costs and the conduct complained of is more tenuous. PP & A is an organization formed for the purpose of advocating on behalf of the developmentally disabled. *See* 114 Stat 1677, PL 106–402, 2000 S 1809. It is conceptually troublesome to predicate standing on a "frustration" of such an organization's mission which causes a drain on its resources where in fact the organization is devoting its resources to accomplishing its mission. *See Shammouth v. Karp*, No. Civ. A. 96–4706, 1997 WL 551207, *2 (E.D.Pa.1997)(Waldman, J.). *See also City of Philadelphia v. Beretta*, 126 F.Supp.2d 882, 897 (E.D.Pa.2000)(rejecting plaintiff's argument that it could sue for the costs of educational programs it conducted to counteract gun violence). However, at least under certain statutes, there appears to be a willingness for courts to find standing when ideological organizations devote resources to eradicate a particular conduct. *See Havens*, 455 U.S. at 378–379, 102 S.Ct. 1114; *Alexander v. Riga*, 208 F.3d 419 (3d Cir.2000). *See also Gaskin v. Commonwealth of Pennsylvania*, Civ. A. No. 94–4048, 1995 WL 154801 (E.D.Pa. Mar. 30, 1995). Therefore, given the present state of the law, we find that even with respect to the advocacy costs, there is a sufficient causal connection.

## 3. Redressability

 Plaintiff argues that declaratory and/or injunctive relief would ensure that the Defendant implemented the P/FDS Waiver. Pl.'s Mem. at 15. If the DPW implemented the waiver, Plaintiff could then "cease spending further time" on the issue. *Id.* Plaintiff contends that if the requested relief is granted, it could "turn its attention to the many other issues affecting the rights of individuals with developmental disabilities." *Id.*

Plaintiff does not dispute the fact that even if the waiver services are provided to the total number of individuals stated in the waiver application, there will still be thousands of developmentally disabled individuals who do not receive such services. *See* Am. Compl. ¶¶ 35, 51. A waiting list will persist even if Plaintiff receives all the relief it requests. Accordingly, PP & A's costs of advocating for an end to the waiting list for P/FDS services will remain, regardless of the outcome of this litigation. However, if relief is granted, Plaintiff would no longer need to expend resources on advocating for a full and prompt implementation of the waiver.

Turning to the counseling costs, these will also persist even if Plaintiff receives a favorable decision. It is possible that they will be marginally reduced. According to

the Plaintiff, approximately 2,600 individuals are receiving services under the waiver. Am. Compl. at ¶ 51. Plaintiff seeks to require the Defendant to provide services to at least 3,382 people. *Id.* at ¶ 35. Thus, if Plaintiff were to receive the requested relief, the pool of individuals who potentially would need counseling is reduced by approximately 782 people. *Id.* at ¶¶ 35, 51.

We do have concerns about whether a favorable decision on each of the claims will redress Plaintiff's injuries. If this litigation were at the summary judgment stage, we might conclude that Plaintiff had not shown a concrete enough injury capable of redress to satisfy Article III. However, at this preliminary stage, we find that the Amended Complaint presents a claim for relief over which we have subject matter jurisdiction.

### 4. Prudential Considerations

 Besides the Article III case or controversy requirement, courts are generally also bound by "prudential limitations" on the exercise of federal jurisdiction. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). These limits include: (1) that the injury not be a generalized grievance that is shared in substantially equal measure by all or a large class of citizens, (2) that the plaintiff assert his or her own legal rights rather than those of third parties, and (3) that the plaintiff's complaint falls within the zone of interests to be protected or regulated by the statute in question. *Id.*, *Powell v. Ridge*, 189 F.3d 387, 404 (3d Cir.1999). However, Congress may, either explicitly or implicitly, grant standing to the full limits of Article III. *Havens*, 455

U.S. at 372, 102 S.Ct. 1114 (1982), *Powell*, 189 F.3d at 404.

Plaintiff argues that in 42 U.S.C. § 6042[5] Congress intended to remove the prudential limitations to standing. As discussed more fully below, we agree that Congress intended to make it easier for protection and advocacy organizations to bring suit on behalf of others, i.e., associational standing. However, the legislative intent on standing when an organization is bringing suit on the basis of injury to itself is less clear. Plaintiff relies on *Risinger v. Concannon*, 117 F.Supp.2d. 61, 69–70 (D.Me.2000), to support its contention that it does not have to overcome any of the traditional prudential concerns. Pl.'s Mem. at 16. *Risinger* involves associational standing for a protection and advocacy organization. *Id.* It does not address the ability of such organizations to bring suit on their own behalf. *Id.*

We need not decide whether Congress intended to confer standing to the full reaches of Article III when protection and advocacy organizations bring suit on their own behalf because this Plaintiff can overcome these limits. PP & A's alleged injury is specific enough so as not to be considered a generalized grievance. The organization asserts that it personally had to undertake various expenses as a result of Defendant's conduct. Am. Compl. at ¶ 7. It does not argue that the failure to provide home and community-based services negatively affects society. *See Sierra Club v. Morton*, 405 U.S. 727, 738–740, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In *Sierra Club*, the Supreme Court held that an organization's long standing and deep commitment to environmental causes was insufficient to confer standing when the group attempted to challenge a develop-

---

5. As mentioned above, this statute has been replaced by 114 Stat 1677, PL 106–402, 2000 S 1809. We are assuming that Plaintiff means to rely on the statute currently in effect.

ment project. *Id.* at 728–740, 92 S.Ct. 1361. Unlike the Sierra Club, PP & A is alleging an economic injury, not one to its ideology. *See* Am. Compl. at ¶ 7.

### C. PP & A Has Not Satisfied The Requirements For Associational Standing

 An organization's standing to sue on behalf of others, referred to as "associational standing," can derive from either judicial discretion or a congressional grant. *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 551–553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). An organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself. *Warth,* 422 U.S. at 511, 95 S.Ct. 2197. In *Warth,* the Court held that an association "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action." *Id.* The injury must be: "of the sort that would make out a justiciable case had the members themselves brought suit." *Id.* If this can·be established, and the nature of the claim and of the relief sought does not require the individual participation of each injured party, "the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Id.*

 In *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343–44, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court refined *Warth*'s requirements into a three-part test. *Id.* at 343, 97 S.Ct. 2434. First, the organization must demonstrate that "its members would otherwise have standing to sue in their own right." *Id.* Second, the interests which the organization "seeks to pro-

tect" must be "germane to the organization's purpose." *Id.* Third, "neither the claim asserted nor the relief requested" can require the participation of individual members in the lawsuit. *Id.*

 In *United Food Workers,* the Court explained that the Article III limitations on standing required the satisfaction of only the first two prongs of this test. 517 U.S. at 554–555, 116 S.Ct. 1529. Therefore, Congress may grant standing to an organization to sue on behalf of its members as long as the members would have standing to sue in their own behalf and the litigation is germane to the group's purpose. *Id.*

In support of its claim of standing to sue on behalf of disabled adults not receiving waiver services, Plaintiff invokes the Developmental Disabilities Assistance and Bill of Rights Act ("DDA").[6] The DDA requires states, as a condition of receiving federal financial assistance, to: "have in effect a system to protect and advocate the rights of individuals with developmental disabilities." 114 Stat 1677, 1712, PL 106–402, 2000 S 1809, Sec. 143. Organizations established pursuant to this clause, must have the authority to: "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements." *Id.* The parties do not dispute that Plaintiff is the agency designated pursuant to this statutory scheme.

 Given the broad remedial purpose of the DDA, this Court finds that the statute permits PP & A to file claims on

---

6. As discussed above, although Plaintiff cites 42 U.S.C. § 6042; we assume that it meant to rely on 114 Stat 1677, Sec. 143.

behalf of individuals with mental illness and developmental disabilities to the full extent of Article III. *See Risinger*, 117 F.Supp.2d at 69 (concluding the same); *Tennessee Protection and Advocacy, Inc. v. Bd. of Educ. of Putnam County, Tennessee*, 24 F.Supp.2d 808, 814 (M.D.Tenn.1998)(finding implicit Congressional grant of standing "to advocacy groups to advocate for disabled individuals to the full extent permitted by Article III" in 42 U.S.C. § 6041, which is the predecessor to 114 Stat 1677). Thus, to have standing, PP & A only needs to establish that an individual constituent would otherwise have standing to bring the claims in his or her own right and that the purposes of the organization are germane to the claims brought. *See United Food*, 517 U.S. at 555–556, 116 S.Ct. 1529; *Risinger*, 117 F.Supp.2d at 70. While the claims before us are germane to PP & A's purpose, the first prong of the test has not been established.

The Amended Complaint alleges that there are thousands of individuals with mental retardation in Pennsylvania who are on the waiting list for home and community-based services, and that many of these individuals are eligible for and could benefit from such services. Am. Compl. at ¶ 43, 54. The Amended Complaint does identify one individual, Mitchell Landsman. However, his claims were dismissed and are no longer before this Court. Therefore, as of today, the Amended Complaint does not identify any specific individual.

Plaintiff, relying on *Doe v. Stincer*, 175 F.3d 879 (11th Cir.1999), argues that it is not required to identify and represent specific clients who have been harmed. Pl.'s Mem. at 19. In *Doe*, the Eleventh Circuit rejected the argument that a protection and advocacy system ("P & A") had to name a specific individual in order to have standing. 175 F.3d at 884–885. However,

the P & A did have an obligation to show that one of its constituents had standing to sue. *Id.* at 886. The court held that an affidavit stating that there were "many" individuals who were either denied access to their mental health records or who were discouraged from trying to do so, was insufficient to confer representative standing on the protection and advocacy organization. *Id.* at 887. The organization had also argued that it had received a complaint from an individual who was denied access to his mental health records. *Id.* The court did not consider this sufficient to confer standing on the P & A because the group did not establish that this alleged injury was caused by the statute in issue and that the injunctive relief requested would redress the injury. *Id.* Thus, while the organization could have brought suit on behalf of an anonymous member, the P & A still had to show how a specific constituent was harmed by the challenged action. *Id.*

Similarly, *Tennessee Protection and Advocacy, Inc.*, held that the plaintiff, did not have standing when it was not filing on behalf of specific, named, injured individuals. 24 F.Supp.2d at 816. The plaintiff had merely alleged that the school board's conduct discriminated against all disabled children in the school system. *Id.* The court recognized the need to facilitate the ability of P & A's to bring suits to protect the rights of injured developmentally disabled individuals. *Id. quoting Protection & Advocacy Inc. v. Murphy*, No. 90 C 569, 1992 WL 59100 (N.D.Ill. Mar. 16, 1992). However, the court reasoned that this concern could not remove the requirements, established by *Warth v. Seldin. Id.* To satisfy Article III, P & A's must present a specific and concrete factual allegation of injury. *Id.*

We agree with the *Tennessee* court that Plaintiff must identify a specific constitu-

ent who is being harmed by the Defendant's actions. 24 F.Supp.2d at 816. In *Warth*, the Court emphasized the need for plaintiffs seeking associational standing to demonstrate concrete and particularized injuries. 422 U.S. at 501, 95 S.Ct. 2197. Without an allegation of a demonstrable, particularized injury, there can be no confidence of "a real need to exercise the power of judicial review" or that relief can be framed "no [broader] than required by the precise facts to which the court's ruling would be applied." *Id.* at 508, 95 S.Ct. 2197. Plaintiff does not identify any specific individual on whose behalf it brings this action. Nor does Plaintiff even refer to a single constituent who would have standing to bring this action on her own behalf, i.e., someone who meets the eligibility criteria for the P/FDS Waiver and who has been denied the opportunity to apply for and/or be evaluated for services under that waiver. Thus, PP & A has not satisfied the Article III requirements for associational standing.

 Plaintiff argues that it has *previously* identified, to this Court, individuals who were not allowed to apply for and who were not provided with the P/FDS waiver services for which they were eligible. Pl.'s Mem. at 20. These individuals are Mr. DeLong, Mr. Landsman, and Mr. Vasquez. *Id.* It is well-settled that in deciding a

motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). As discussed above, the claims of these three individuals are no longer before this Court. *See* Am. Compl.; Feb. 14, 2001 Order. We could take judicial notice that three people previously *alleged* that they were injured by Defendant. But there is no basis for us to take judicial notice that people were in fact injured by or are presently being harmed. The fact these individuals were previously parties to this litigation cannot be used to confer standing on PP & A.[7] *See Protection & Advocacy v. Murphy*, 1992 WL 59100 (holding that a protection and advocacy group could not have associational standing if claims of its individual constituents were not viable).

Plaintiff also attempts to rely on the two declarations it submitted in conjunction with its memorandum. One is by Anita Mack, who, on behalf of her daughter, applied for P/FDS services but who has not yet received them. Pl.'s Ex. H: Mack Decl. The second is by Kevin Casey, the Executive Director of PP & A. Pl.'s Ex. A, Casey Decl. These documents were not referenced in or attached to the Amended

---

**7.** Plaintiff also argues that the fact the claims of Mr. DeLong, Mr. Landsman and Mr. Vasquez are now moot does not undermine its standing. Pl.'s Mem. at 21. We agree that there is a long-standing doctrine which allows courts to review otherwise moot claims if the problem is "capable of repetition, yet evading review." *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This doctrine is inapplicable to the matter before us. These individuals are no longer parties to this action. Mr. DeLong and Mr. Vasquez were dropped from the Amended Complaint through the agreement of counsel. This Court has never reviewed the merits of their claims. As to Mr. Landsman's claims, sum-

mary judgment was granted in favor of the Defendant, after the filing of an uncontested motion. Plaintiff suggests that the Defendant is purposely providing services to litigants so as to prevent the litigation of their claims. Pl.'s Mem. at 21. If this is in fact the case, and we do not think that it is, then the individual who begins receiving services after bringing suit, could refuse to withdraw his or her claim. If such a scenario were to occur, this Court could then examine whether the circumstances permit review of moot claims. The present motion, concerns Plaintiff's standing and not this Court's ability to review moot claims.

Complaint and are not matters of public record. The Defendant has facially attacked the complaint, and we cannot conclude that subject matter jurisdiction exists on the basis of information which was not contained in the complaint.[8] *See Pension Benefit,* 998 F.2d at 1196–1197; *Gould Elec.,* 220 F.3d at 178 ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto"); *Hunter,* 2000 WL 1880257 at *3.

■ *Hunter* elaborates on the need to keep Fed.R.Civ.P. 12(b)(1) distinct from Fed.R.Civ.P. 12(b)(6). *Id.* If, in connection with a 12(b)(1) motion, a defendant submits, and the court considers evidence that controverts the allegations contained in the complaint, the motion must be treated as a factual challenge under Fed. R.Civ.P. 12(b)(1). *Id., citing Gould,* 220 F.3d at 178. In the matter before us, the Defendant did not attempt to introduce documents extraneous to the Amended Complaint, the Plaintiff did. Defendant's Motion asserts that, this Court's subject matter jurisdiction is not apparent from the face of the Amended Complaint, as required by basic principles of standing. *See Mortensen,* 549 F.2d at 891; *Montgomery,* 141 F.3d at 74; *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926); *Chasis v. Progress Mfg. Co.,* 382 F.2d 773, 776 (3d Cir.1967)("It is 'hornbook law' that the jurisdiction of a District Court must appear affirmatively on the face of the complaint"); *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 550, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)(Burger, C.J. dissenting)("At the district court stage, the facts required by *Warth* should normally appear on the face of the complaint"), Fed.R.Civ.P. 8(a)(1). We agree that the Amended Complaint does not contain allegations sufficient to confer associational standing on PP & A. Plaintiff's belated submission of declarations does not correct the Amended Complaint's deficiencies.

■ Moreover, even if we took the declarations into consideration, we would still conclude that PP & A does not meet the requirements for associational standing. Ms. Mack contends that she submitted her application for P/FDS Waiver services in December 2000. Under the applicable regulations, the DPW does not have to reply until at least April 15, 2001. Mental Retardation Bulletin No. 00–00–09, "Service Preference in Medicaid Waivers for Individuals with Mental Retardation," attached to the Answer and Affirmative Defenses of Defendant. Thus, Ms. Mack's claims are not yet ripe for judicial determination.[9] Unripe claims cannot be used to confer standing on a protection and advocacy group. *See Murphy,* 1992 WL 59100, at *8–12 (constituent's unripe claim could not be used to confer associational standing on protection and advocacy group). The Mack Declaration does not identify an individual constituent who would have standing to sue in her own right.

The Casey Declaration states that PP & A provided substantial assistance to four unnamed individuals who were having difficulty accessing services. Pl.'s Mem. at 20. These individuals were initially pre-

---

8. In their Reply Brief, the Defendant's argued that the declarations amounted to new evidence which went beyond the issues raised in Defendant's Motion.

9. Defendant also argued that the declaration does not show a redressable injury. As we expressed in our Order Denying Class Certifi-

cation, we do have concerns about how to structure relief should Plaintiff prove an injury. Since the Defendant has not yet made a final determination as to whether Diona Mack will receive waiver services, it is inappropriate for us to examine whether she meets the other requirements for alleging an injury-in fact.

vented from obtaining services but, after the intervention of PP & A staff members, they became enrolled. *Id.;* Casey Decl. at ¶¶ 10–13. This fact goes to an injury suffered by Plaintiff itself. It does not amount to an identification of an individual who is presently being denied services. *See Doe,* 175 F.3d at 887. Plaintiff does not even argue that a favorable decision would provide any type of redress to these individuals. Thus, even if the allegations contained in this declaration were made in the Amended Complaint, it would not have been enough to grant associational standing to PP & A.

It may be that Plaintiff can now identify a specific constituent who has suffered a concrete and particularized injury. If so, Plaintiff may move to amend its complaint to include this constituent.

### III. CONCLUSION

Accordingly, we find that based on the face of the Amended Complaint, PP & A has standing to bring suit for injuries suffered in its own right. However, it does not have standing to sue as a representative of its constituents because it has not identified a specific individual who would have standing to sue in his or her own right.

An appropriate order follows,

### *ORDER*

AND NOW, this 29th day of March 2001, upon consideration of Defendant's Motion to Dismiss Amended Complaint and Memorandum of Law filed on February 9, 2001, Plaintiff's Memorandum of Law in opposition to that Motion, filed on February 22, 2001, and Defendant's Sur Reply filed on March 23, 2001, consistent with the foregoing Opinion, it is hereby ORDERED that: said Motion is DENIED without prejudice to defendants right to move for summary judgment when discovery is complete. At this point in time, we have found that Plaintiff has standing to

sue in its own right, subject to future motions before this court. We nevertheless find that without amendment of its complaint to identify a specific individual or individuals with standing to sue, Plaintiff cannot proceed as a representative of its constituents.